**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## LETTER OPINION

May 2, 2007

Christopher R. Foust
191 Pulaski Avenue
Sayreville, NJ 08872

    (*Plaintiff Pro Se*)

Christopher J. Christie
United States Attorney
Susan Reiss
Special Assistant United States Attorney
c/o Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278

    (*Attorney for Defendant*)

    RE:    **Foust v. Commissioner of Social Security**
            **Civ. No. 05-4616 (WJM)**

Dear Litigants:

    Plaintiff *pro se* Christopher Foust ("Foust") brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  There was no oral argument.  Fed. R. Civ. P. 78.  For the following reasons, the Commissioner's decision is **AFFIRMED**.

**Background**

Foust was born in 1966. He last worked as an x-ray service technician in April 2001. (R. at 31, 104, 112.) Prior to that, Foust worked as a welder, plumber, and dock worker. (R. at 104.) Foust claims that he injured his back in March 2001 at work. (R, at 220.) He also claims that he suffers from neck pain due to a motor vehicle accident. (R. at 220.)

On December 27, 2002, Foust applied for DIB and SSI. (R. at 87.) In his application, he alleged disability since April 3, 2001 due to back and neck nerve damage, headaches, and dizziness. (R. at 20, 87.) At the time, Foust was 36 years old. (*See* R. at 87.) This application was denied initially on April 29, 2003 and upon reconsideration on September 25, 2003. (R. at 70-73, 76-79.) On June 30, 2004, a hearing was held before Administrative Law Judge Dean W. Determan (the "ALJ"). (R. at 26-65.) Foust appeared *pro se* at the hearing. (R. at 26-65.)

On July 30, 2004, the ALJ entered a decision finding that Foust was not entitled to a period of disability, and therefore was not eligible for DIB or SSI. (R. at 19-25.) Applying the familiar five-step disability analysis, the ALJ first found that Foust had not engaged in substantial gainful activity since his alleged onset date. (R. at 20.) Then, at step two, the ALJ concluded that the medical evidence indicated that Foust suffers from degenerative disc disease of the cervical and lumbosacral spine, an impairment that is severe within the meaning of the Social Security Regulations, 20 C.F.R. §§ 404.1520 and 416.920. (R. at 20.) The ALJ further determined that Foust's learning disability, headaches and dizziness were not severe. (R. at 22.) Next, at step three, the ALJ found that Foust's degenerative disc disease of the cervical and lumbosacral spine, although severe, was not severe enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1 of the Regulations, 20 C.F.R., Part 404, Subpart P, App. 1. (R. at 22.) Specifically, the ALJ determined that Foust's impairment did not meet Listing 1.04, which pertains to disorders of the spine, because he did not have persistent motor loss, positive straight leg raising or an inability to ambulate effectively. (R. at 22.)

Then, at step four, the ALJ evaluated Foust's residual functional capacity ("RFC") and found that he could perform substantially the full range of sedentary work. (R. at 22, 24.) Based on this determination, the ALJ next determined that Foust could not perform any of his past relevant work as it required activities beyond his RFC. (R. at 22.) Finally, turning to step five, the ALJ relied on Medical-Vocational Rule 201.28 to find that there were a significant number of jobs in the national economy that Foust could perform. (R. at 23-24.) Accordingly, the ALJ determined that Foust was not entitled to benefits.

Foust requested review by the Appeals Council, which was denied on May 26, 2005. (R. at 5-8.) Accordingly, the ALJ's decision became final. Foust, appearing *pro se*, now appeals this decision.

**Discussion**

**I.      Standard of Review**

The district court reviews the factual findings of the Commissioner to determine whether they are supported by substantial evidence. *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). When substantial evidence upon which the ALJ can base his factual findings exists, this Court is bound by those determinations of the ALJ. *See id.* (citing 42 U.S. § 405(g)). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (quoting *Jesurum v. Sec'y of the U.S. Dep't of Health & Human Srvcs.*, 48 F.3d 114, 117 (3d Cir. 1995)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. Under the substantial evidence standard, the district court is required to review the record as a whole. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). If there is more than one rational interpretation of the evidence in the record, this Court must accept the conclusions of the ALJ and affirm his decision. *See Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Court is "not permitted to weigh the evidence or substitute [its] own conclusions for that of the fact-finder." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Overall, the substantial evidence standard is a deferential standard of review, which requires deference to inferences drawn by the ALJ from the facts, if they are supported by substantial evidence. *Schaudeck*, 181 F.3d at 431. Furthermore, since Foust is proceeding *pro se*, we shall construe his briefs liberally. *See Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002).

**II.     The ALJ Based His Decision on Substantial Evidence**

At the outset, the Court notes that Foust's *pro se* briefs are rather sparse and do not clearly state his arguments on appeal. However, as best as the Court can discern, it appears that he is raising three arguments. First, Foust argues that the ALJ did not base his residual functional capacity determination on substantial evidence. (*See* Pl.'s Rule 9.1 Br. at 2; Pl.'s Reply Br. at 5.). Second, Foust contends that the ALJ incorrectly determined that his learning disability was not a severe impairment. (*See* Pl.'s Reply Br. at 2). Finally, Foust argues that the ALJ failed to acknowledge various limitations, which are discussed below. (*See* Pl.'s Reply Br. at 2-4).[1] As will be seen, each of these arguments lack merit. Accordingly, the ALJ's decision will be affirmed.

     **A.      The ALJ's Residual Functional Capacity Determination was Based on Substantial Evidence**

---

[1]The Court notes that, while Foust raises most of these arguments in his reply brief, thereby violating Local Civil Rule 7.1, we will treat them as having been raised in his initial brief.

3

Residual functional capacity ("RFC") is an administrative assessment of the most work a claimant is able to perform given the limitations imposed by his impairment. 20 C.F.R. §§ 404.1545 and 416.945; Soc. Sec. Ruling 96-8p. "In making a residual functional capacity determination, the ALJ must consider all evidence before him. Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reasons for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000).

Here, the ALJ satisfied these requirements. First, he began his discussion by defining "residual functional capacity" and listing the various factors considered in determining a claimant's RFC. (R. at 22, citing 20 C.F.R. §404.1529 and Soc. Sec. Ruling 96-7p.) Next, the ALJ listed the evidence that can be relied upon in weighing these various factors. (R. at 22, citing 20 C.F.R. § 404.1527, Soc. Sec. Ruling 96-2p and 96-6p.) The ALJ then relied on his particularized findings regarding the medical evidence submitted and concluded that Foust retained the RFC to perform substantially all of the full range of sedentary work. (R. at 22, 24.)

The ALJ undertook a very detailed and thorough analysis in reaching this conclusion. For instance, he reviewed a September 20, 2001 MRI of Foust's lumbar spine, which revealed only a mild disc bulge and protrusion at T11-12 and minimal degenerative change of the lower lumbar spine. (R. at 21, 270.) The ALJ also looked at a report from Foust's examining physician, Dr. William J. Mullally, who observed Foust as having normal gait and coordination. (R. at 21.) Notably, Dr. Mullally remarked that Foust had intact intellectual and cortical functioning, and no pathologic weakness in his extremities except for possible slight weakness of the extensor digitorum in the right lower extremity. (R. at 21.) In addition, Dr. Mullally indicated that Foust derived some benefit from physical therapy and that his sensory symptoms had lessened. (R. at 21, 200.)

The ALJ also reviewed reports from Dr. John L. Hochberg, who was Foust's treating physician. The ALJ noted that one of Dr. Hochberg's reports indicated that Foust should try to look for work. (R. at 21, 218.) Furthermore, the ALJ reviewed reports from Dr. Alan Plauka, who performed an orthopedic consultative examination of Foust. The ALJ noted that Dr. Plauka observed that Foust only walked with a slight limp and had 4/5 strength in his left extremities and full strength in his right. (R. at 21, 221.) The ALJ also remarked that Dr. Plauka only reported slight range of motion deficits along the cervical and lower lumbar spine. (R. at 21, 221.) Moreover, Dr. Plauka noted that Foust appeared to be in no acute distress, could perform a three-quarter squat, needed no help getting on and off the examination table and that he was able to rise from a chair without difficulty. (R. at 221.) Dr. Plauka also indicated that straight leg raising was negative. (R. at 21.)

In addition, the ALJ examined I.Q. testing performed by Alan Dubro, Ph.D. (R. at 21.) The testing indicated that Foust's intelligence was in the low average range. (R. at 225.) Dr. Dubro also wrote that Foust was capable of performing complex tasks with supervision and appeared capable of maintaining attention and concentration. (R. at 21, 225.) He also noted that

Foust was able to attend to a routine and maintain a schedule. (R. at 21, 225.) Moreover, Dr. Dubro stated that Foust's cognitive problems were not significant enough to interfere with his ability to function on a daily basis. (R. at 225-26.)

Additional medical and diagnostic evidence also supports the ALJ's decision. For instance, the ALJ commented that treatment notes from the Browntown Wellness Center indicated on July 28, 2003 that Foust's range of motion was within normal limits to all planes and strength was full. (R. at 21, 232-34.) The ALJ also remarked that MRI studies from March 30, 2004 showed no significant change from the earlier September 2001 MRI. (R. at 21, 259.) In addition, the ALJ remarked that Foust was seen at Robert Wood Johnson Hospital on April 21, 2004 due to abdominal pain and was not found to have any inflammatory bowel process. (R. at 21, 250-61.)

The ALJ's findings here were well-reasoned and well-supported by the record. They support a finding that Foust retained the RFC to perform substantially the full range of sedentary work as that term is defined.[2] Accordingly, the Court finds that the ALJ's determination here was based upon substantial evidence.

### B.     Discussion of Foust's Learning Disability

Foust next argues that the ALJ did not properly determine that his learning disability was a severe impairment. To support this claim, Foust notes that he attended special education classes throughout his secondary education and that his conceptual ability is currently below average. (Pl. Reply. Br. at 2.) The ALJ analyzed this impairment and concluded that it was not severe for purposes of the Social Security Act. (R. at 22.) Because the ALJ based this conclusion on substantial evidence, Foust's argument on this point is denied.

At step two of the analysis, the ALJ is required to make a determination regarding the severity of each alleged impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment must be "severe" to allow for a finding of disability. *Id.* For a mental impairment to be severe, it must significantly limit the claimant's mental ability to perform basic work activities. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Here, Foust essentially claims that his learning disability is a severe nonexertional impairment that prevents him from learning any new vocation. (*See* Pl.'s Reply Br. at 3.) The ALJ, though, rejected this argument, relying on the medical records of Dr. Dubro. (Tr. at 21.) As discussed earlier, Dr. Dubro noted that Foust's I.Q. testing was in the low average range. (R. at 21.) Dr. Dubro also noted that Foust was able to perform complex tasks under supervision, that he could maintain attention and concentration for tasks, and that he could keep a routine and a schedule. (Tr. at 21.) The ALJ further found that Foust's own statements

---

[2]Sedentary work involves lifting no more than ten pounds and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a) and 416.967(a). At the sedentary level of exertion, periods of standing or walking should generally total approximately two hours of an eight hour workday, and sitting should generally total approximately six hours of an eight-hour workday. Soc. Sec. Rulings 83-10 and 96-9p.

regarding the effect of his mental impairment on his ability to work were not entirely credible. (Tr. at 22.)  This finding was based on objective medical evidence in the record, specifically Dr. Dubro's report that Foust is capable of performing basic tasks.

The ALJ's decision that Foust's learning disability is not severe was based on substantial medical evidence in the record.  Therefore, it is affirmed.

### C.    Other Impairments

Next, Foust argues that the ALJ failed to address three pieces of evidence.  First, he argues that the ALJ failed to consider the impact that varicocele surgery had on his ability to work.  (*See* Pl.'s Reply Br. at 3.)  While the ALJ did not specifically address this surgery in his opinion, the ALJ's conclusions would not have changed had he discussed it.  A review of the record shows that Foust raised this argument at the hearing (Tr. at 32-35), but submitted no medical evidence whatsoever supporting this claim.  Therefore, the ALJ was correct in not considering the surgery in his disability analysis.  *See* 20 C.F.R § 404.1508  ("A physical ... impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.").

Second, Foust argues that he suffers pain in relation to having one leg shorter than the other.  A review of the record, though, shows that Foust never once raised this impairment before the ALJ or in his application for benefits.  (*See* R. at 26-65, 103.)  On top of that, Foust fails to point the Court to any medical findings in the record regarding this impairment.  *See* 20 C.F.R § 404.1508.  Accordingly, Foust's argument on this point is also denied.

Finally, Foust argues that the ALJ failed to consider the role that moving heavy x-ray machinery played in causing his medical problems.  The record, though, shows that the ALJ heard testimony from Foust regarding heavy lifting performed on his previous job.  (*See* R. at 31-32, 35-36.)  The ALJ, though, rejected this testimony because it was not entirely credible.  Furthermore, that any impairments were caused by moving heavy machinery, or by anything else for that matter, would not have changed the ALJ's conclusion that Foust was still capable of performing sedentary work.  That conclusion was based upon voluminous medical and diagnostic records indicating that Foust was still physically and mentally capable of meeting the demands of such work.  Accordingly, Foust's argument on this ground is denied.

### Conclusion

For the foregoing reasons, the decision of the ALJ is **AFFIRMED**.  An appropriate Order accompanies this Letter Opinion.

s/William J. Martini

---
**William J. Martini, U.S.D.J.**